## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Case No.: 0:14-cv-60580

| | |
|---|---|
| **ANTHONY MAZZEO,** individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| *Plaintiff,* | : |
| | : |
| *vs.* | : |
| | : |
| **NATURE'S BOUNTY, INC.**, a New York corporation, | : |
| | : |
| *Defendant.* | : |
| | : |
| | : |

## CLASS ACTION COMPLAINT

Plaintiff, ANTHONY MAZZEO ("Plaintiff"), individually and on behalf of all other similarly situated Florida purchasers, by and through his undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint against NATURE'S BOUNTY, INC. ("Nature's Bounty" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.      Defendant sells a variety of supplements that make false and misleading claims that are likely to deceive reasonable consumers, because Defendant misrepresents and/or omits the true nature and/or benefits of its "Flush Free Niacin" (the "Product").  *See* **Exhibit 1**, attached hereto and incorporated herein, True and Correct Replication of Similar Packaging to the Product Purchased by Plaintiff during the Class Period (defined below).

2.      During the Class Period, Defendant has represented the "Flush Free Niacin" which is effective in and has the ability to improve and promote heart health.  In truth, Flush Free

1

Niacin, which consists of inositol hexanicotinate, does not have any effect on any condition that improves or impacts heart health.  Simply put, "no flush, no effect."[1]

3.     Defendant's misrepresentations are material and significant in that they mislead consumers and induce them to purchase or pay more for Flush Free Niacin.  Defendant's misrepresentations relating to the qualities and characteristics of Flush Free Niacin have the potential to result in significant adverse health effects as a result of consumers purchasing their product to improve heart health and prevent heart disease.

4.     Plaintiff brings this class action on behalf of himself and all similarly situated consumers in the State of Florida who purchased the Products during the four years preceding the filing of this complaint, for personal use and not for resale.  Plaintiff seeks damages, restitution, and injunctive relief on behalf of the Class for Defendant's false and misleading marketing and sale of the Flush Free Niacin.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter presented in this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the Class are over $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d). As set forth below, Plaintiff is a citizen

---

1.     William Davis, M.D., *Ask the Doctor: Using Niacin to Improve Cardiovascular Health*, Life Extension Magazine, March 2007, *available at* https://www.lef.org/magazine/mag2007/mar2007_atd_01.htm (last visited Dec. 26, 2013).

of Florida, and Defendant can be considered a citizen of New York. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

6.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(a) because Defendant conducts business within, may be found in, and is subject to personal jurisdiction in this District, and a substantial part of the events, misrepresentations, and/or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7.      Plaintiff, Anthony Mazzeo, is an individual who, at all material times hereto, was a citizen of the State of Florida, and a resident of Broward County.  Plaintiff purchased the Product during the Class Period in this Judicial District, as more fully described below.

8.      Defendant is a corporation organized under the laws of the State of New York. Defendant lists with the New York Division of Corporations a Chief Executive Officer as Michael Collins, with its principal place of business as 2100 Smithtown Avenue, Ronkonkoma, New York 11779, and a Registered Agent as Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

9.      Plaintiff is informed and believes, and thereon alleges, that Defendant and its employees, subsidiaries, affiliates and other related entities, were, agents, servants and employees of each other, and, each was acting within the purpose and scope of said agency and employment.

10.      Whenever referring to any acts or transactions of Defendant, such allegations shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction for Defendant while engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

### Flush Free Niacin Does Not Promote Heart Health

11.     Niacin is the common name for the vitamin B3 and has various chemical compositions.  Niacin in the form of nicotinic acid (also referred to herein as "Niacin") has been studied to prevent or improve symptoms of high cholesterol, heart disease, diabetes, osteoarthritis, and potentially other conditions.  Nicotinic acid "has been used since the 1950s to try to lower elevated LDL ("bad") cholesterol and triglyceride (fat) levels in the blood."[2]

12.     "Good cholesterol" is known as High Density Cholesterol ("HDL"), and "bad cholesterol" is known as Low Density Cholesterol ("LDL").  One method of promoting heart health is to raise your HDL and lower your LDL.

13.     "However, side effects [of nicotinic acid] can be unpleasant and even dangerous. High doses of niacin cause flushing of the skin, stomach upset (which usually subsides within a few weeks), headache, dizziness, and blurred vision," along with "an increased risk of liver damage."[3]  Niacin as nicotinic acid comes in both prescription and over the counter varieties. Prescription varieties, sold drug names such as Niaspan and Niacor, control the release of the nicotinic acid and help reduce flushing side effects are much more expensive than over the counter varieties.  Over the counter varieties of nicotinic acid – commonly called "Niacin" – immediately release the nicotinic acid, are cheaper and are more likely to result in flushing.

14.     The Flush Free Niacin sold by Defendant does not contain nicotinic acid, but inositol hexanicotinate (hereinafter "Flush Free Niacin").  Flush Free Niacin in the form of

---

2.     *See eg.* Lonza Ltd., Media Center, Study Finds Extended Release Niacin, but not IHN, Effective in Lowering Cholesterol Levels, Feb. 6, 2013, available at http://www.lonza.com/about-lonza/media-center/news/2013/130206-niamax-study-results.aspx (last visited Dec. 26, 2013).

3.     *Id.*

inositol hexanicotinate has a different chemical composition than Niacin as nicotinic acid, and is therefore a distinct product with different qualities and characteristics.  Although Flush Free Niacin does not cause flushing of the skin associated with Niacin as nicotinic acid, it is "ineffective in managing high cholesterol" and does not improve or effect heart health.[4]  In fact studies have shown that Flush Free Niacin, or inositol hexanicotinate, does not provide lipid benefits (or heart health) benefits at all and the inositol hexanicotinate "results were the same as [the] placebo."[5]  Simply put, "no flush, no effect."[6]

### Defendant's "Heart Health" Claims Are False, Misleading, and Likely to Deceive Reasonable Consumers

15.     Defendant has sold the Product claiming to promote heart health, despite the fact that it does not promote heart health.

16.     During the Class Period (defined below), Defendant made misrepresentations and/or omissions regarding the Product, by claiming the Product promotes heart health, but in reality, the Product does not promote heart health.

17.     Therefore, Defendant's statements on the front labeling of the Product and promotion of the Product are false, misleading, and likely to deceive reasonable consumers, like Plaintiff and members of the putative Class.

18.     Plaintiff and members of the putative Class relied on Defendant's material statements regarding the Product in making their decision to purchase the Product.

---

4.     *Id.*

5.     *Id.*

6.     William Davis, M.D., *Ask the Doctor: Using Niacin to Improve Cardiovascular Health*, Life Extension Magazine, March 2007, *available at* https://www.lef.org/magazine/mag2007/mar2007_atd_01.htm (last visited Dec. 26, 2013).

19.     As a result, Plaintiff and putative Class members suffered economic damages as a result of purchasing the worthless Product because had it not claimed to promote heart health, they would not have purchased the Product.

20.     Consumers frequently rely on food label representations and information in making purchase decisions.

21.     Plaintiff and members of the putative Class were among the intended recipients of Defendant's deceptive representations and/or omissions.

22.     Plaintiff and members of the putative Class reasonably relied to their detriment on Defendant's misleading representations and/or omissions.

23.     Defendant's false, misleading, and deceptive misrepresentations and/or omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and members of the putative Class.

24.     Defendant's misleading statements about the safety of the Product obscured the material fact that Defendant failed to disclose the true nature of the Product.

25.     Defendant made the deceptive representations and/or omissions related to the Product with the intent to induce Plaintiff's and other members of the putative Class' purchase of the Product.

26.     Defendant's deceptive representations and/or omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

27.     Thus, Plaintiff's and members of the putative Class' reliance upon Defendant's misleading and deceptive representations and/or omissions may be presumed.

28.     Furthermore, the materiality of those representations and/or omissions also

establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and members of the putative Class.

29.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Defendant injured Plaintiff and members of the putative Class in that Plaintiff and members of the putative Class:

    a.   paid a sum of money for Product that were not as represented;

    b.   paid a premium price for Product that were not as represented;

    c.   were deprived the benefit of the bargain because the Product they purchased were different from what Defendant warranted;

    d.   were deprived the benefit of the bargain because the Product they purchased had less value than what Defendant represented;

    e.   did not receive Product that measured up to their expectations as created by Defendant;

    f.   received Product that contained a substance that was other than what was represented by Defendant;

    g.   received Product that were of a different quality than what Defendant promised; and

    h.   were denied the benefit of truthful food labels.

30.     Plaintiff and members of the putative Class would not have purchased the Product if they had known it does not promote heart health, and/or Plaintiff and members of the putative Class would not have paid as much for the Product or purchased the Product at the price premium they did.

31.     Had Defendant not made the false, misleading, and deceptive representations and/or omissions, Plaintiff and members of the putative Class would not have been injured.

32.     Plaintiff and members of the putative Class all paid money for the Product.

33.     However, Plaintiff and members of the putative Class did not obtain the full value

of the advertised Product due to Defendant's misrepresentations and/or omissions.

34.     Plaintiff and members of the putative Class purchased, purchased more of, or paid more for the Product than they would have, had they known the truth about the Product.

35.     Accordingly, Plaintiff and members of the putative Class have suffered injury in fact, lost money or property, and suffered economic damages as a result of Defendant's wrongful conduct.

36.     Therefore, Plaintiff and members of the putative Class are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and/or disgorgement.  Plaintiff and members of the putative Class seek injunctive relief in the form of an Order prohibiting Defendant from selling the Product while claiming to promote heart health.  Plaintiff also seeks restitution for monies wrongfully obtained by Defendant and disgorgement of all ill-gotten revenues and/or profits from the sale of the Product.

## Plaintiff's Purchase of the Product

37.     Plaintiff, Anthony Mazzeo, has purchased the Product in this judicial district during the Class Period (defined below), in reliance on Defendant's material claims and/or omissions related to the Product's efficacy regarding promoting heart health.

38.     Specifically, Plaintiff has purchased Nature's Bounty Flush Free Niacin 500mg 50 capsule Bottle, from a Walgreens Pharmacy located in Broward County, Florida, during the Class Period, for the purchase price of approximately $12.99.

39.     Plaintiff purchased the Product in reliance on Defendant's material statement on the front of the Product that the Product promotes heart health, which Plaintiff interpreted as meaning that consuming the Product will improve Plaintiff's heart health.

40.     Plaintiff sought a product that would promote his heart health, but did not want to cause his skin to flush.  Plaintiff purchased the Product believing the Product would promote heart health.  At the time of purchase Plaintiff believed the Product would promote heart health based on the Product's representation.  At the time of purchase Plaintiff did not know that the Product fails to promote heart health, despite claiming to do so.

41.     Plaintiff would not have purchased the Product at all had it not claimed to promote heart health, which he read on the front label in making his purchase decision.  Plaintiff would not have purchased the Product if he had known it does not promote heart health, and/or Plaintiff would not have paid as much for the Product or purchased the Product at the price premium he did.

## CLASS ALLEGATIONS

42.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

43.     Plaintiff brings this action individually and as a class action under Rules 23(a) and (b)(2) of the *Federal Rules of Civil Procedure* ("FRCP"), and seeks certification of the claims and certain issues of Rule 23, defined as:

> All persons in Florida, who, within the four years preceding the filing the original Complaint ("Class Period"), purchased the Product defined herein for personal use ("Class").

44.     Excluded from the Class are Defendant, its subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

45.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same

evidence as would be used to prove those claims in individual actions alleging the same claims.

Numerosity—Federal Rule of Civil Procedure 23(a)(1)

46.     The members of the Class are so numerous that individual joinder of all class members is impracticable.

47.     The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive distribution and sales network throughout Florida.

48.     Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**

49.     This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class.

50.     All members of the Class were exposed to Defendant's deceptive and misleading advertising and marketing claims and/or omissions alleged herein.

51.     Furthermore, common questions of law or fact include:

      a.     whether Defendant engaged in the conduct as alleged herein;

      b.     whether Defendant's practices violate applicable law cited herein;

      c.     whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and/or other monetary relief; and

      d.     whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief, restitution, and disgorgement.

52.     Defendant engaged in a common course of conduct in contravention of the laws

Plaintiff seeks to enforce individually and on behalf of the other members of the Class.

53.     Similar or identical statutory and common law violations, business practices, and injuries are involved.

54.     Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

55.     Moreover, the common questions will yield common answers.

### Typicality—Federal Rule of Civil Procedure 23(a)(3)

56.     Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the same uniform misconduct described herein.

57.     Further, there are no defenses available to Defendant that are unique to Plaintiff.

### Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)

58.     Plaintiff is an adequate representative of the members of the Class because Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously.

59.     The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.   The Law Offices of Howard W. Rubinstein, P.A. have represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices. *See* http://hwrlawoffice.com.

### Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)

60.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and

declaratory relief, as described herein, with respect to the members of the Class as a whole.

## Superiority—Federal Rule of Civil Procedure 23(b)(3)

61.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

62.    The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

63.    Even if the members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.

64.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the members of the Class' claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 *et seq.*
### (By Plaintiff and the Proposed Class Against Defendant)

65.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through sixty-four (64) of this Complaint as if fully set forth herein verbatim.

66.    Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA") makes "unfair or deceptive acts or practices in the conduct or any trade or commerce" in Florida unlawful.

67.     Defendant violated FDUTPA by engaging in false and misleading advertising and/or omission that are likely to deceive reasonable consumers, such as Plaintiff and other Class members.

68.     Throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product claiming it promotes heart health, such as on the Product's packaging, labeling, and/or other in-store advertisements or statements, despite the fact that the Product does not promote heart health.

69.     Plaintiff and other Class members seek to enjoin Defendant's unlawful acts and practices described above.  Plaintiff and each of the Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined.

70.     Plaintiff would not have purchased the Product had Plaintiff known the Product does not promote heart health.

71.     Plaintiff and other Class members paid for the Product, but the Product Plaintiff and other Class members received were worth less than the Product for which they paid.

72.     Plaintiff and other Class members were injured in fact and lost money as a result of Defendant's conduct described above.

73.     Plaintiff and the Class members seek declaratory relief enjoining Defendant from continuing to sell the Product that falsely, deceptively, and misleadingly claims to promote heart health, along with actual damages, attorney's fees and court costs, and all other applicable relief allowable under FDUTPA.

## SECOND CAUSE OF ACTION:
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE
### (By Plaintiff and the Proposed Class Against Defendant)

74.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through sixty-four (64) of this Complaint as if fully set forth herein verbatim.

75.     Throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product claiming it promotes heart health, such as on the Product's packaging, labeling, and/or other in-store advertisements or statements, despite the fact that the Product does not promote heart health.

76.     Defendant sold the Product claiming to promote heart health.

77.     Plaintiff and other members of the Class reasonably relied on Defendant's skill and judgment to select and furnish suitable goods for their purpose on or about the time Defendant sold the Product to Plaintiff and other members of the Class.

78.     At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, as alleged above, and that Plaintiff and members of the Class were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

79.     However, Defendant breached the warranty implied at the time of sale in that Plaintiff and members of the Class did not receive suitable goods, and the goods were not fit for the particular purpose for which they were sold and/or purchased.

80.     Plaintiff and other members of the Class were induced to purchase the Product that they would not have purchased had it not claimed to promote heart health.

81.     The Product lacks the value Defendant represented the Product had, which was reflected in the purchase price paid by Plaintiff and other members of the Class.

82.     Because of this breach of warranty by Defendant, Plaintiff and members of the Class have suffered actual damages in an amount to be determined at trial.

83.     Plaintiff and Class members gave timely notice to Defendant of Defendant's breach of implied warranty of fitness for particular purpose, individually and on behalf of all members of the Plaintiff Class, directly through a Notice Letter sent to Defendant on December 26, 2013.

**THIRD CAUSE OF ACTION:**
**<u>BREACH OF EXPRESS WARRANTY</u>**
**(By Plaintiff and the Proposed Class Against Defendant)**

84.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through sixty-four (64) of this Complaint as if fully set forth herein verbatim.

85.     Throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product expressly claiming it promotes heart health, such as on the Product's packaging, labeling, and/or other in-store advertisements or statements, despite the fact that the Product does not promote heart health.

86.     Defendant sold the Product expressly claiming to promote heart health.

87.     Plaintiff and other members of the Class reasonably relied on Defendant's express warranty on or about the time Defendant sold the Product to Plaintiff and other members of the Class.

88.     However, the Products do not promote heart health.

89.     Defendant has breached the express warranty regarding the Product promoting heart health because it fails to do so, thus economically injuring Plaintiff and the Class.

90.     Specifically, as a proximate result of the failure of the Products to perform as expressly warranted by Defendant, Plaintiff and members of the Class have suffered actual economic damages in an amount to be determined at trial in that they were induced to purchase products they would not have purchased had they known the true facts about, and have spent money on Products that were not what they were represented to be, and that lack the value Defendant represented the Product to have.

91.     Plaintiff and Class members gave timely notice to Defendant of Defendant's breach of express warranty, individually and on behalf of all members of the Plaintiff Class, directly through a Notice Letter sent to Defendant on December 26, 2013.

92.     Therefore, Plaintiff and Class members seek all applicable and available remedies, damages, and awards for Defendant's breach of express warranty.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *et seq.***
**(By Plaintiff and the Proposed Class Against Defendant)**

93.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through sixty-four (64) of this Complaint as if fully set forth herein verbatim.

94.     Throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product claiming it promotes heart health, such as on the Product's packaging, labeling, and/or other in-store advertisements or statements, despite the fact that the Product does not promote heart health.

95.     Defendant has breached the Implied Warranty of Fitness for Particular Purpose regarding the Product, as described in the Second Cause of Action above, and Defendant has breached an Express Warranty regarding the Product, as described in the Third Cause of Action above.

96.     Plaintiff and other members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

97.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

98.     The Product is a consumer Product as defined in 15 U.S.C. § 2301(6).

99.     By reason of Defendant's breach of the above state law Implied Warranty of Fitness for Particular Purpose, Defendant violated the statutory rights due to Plaintiff and other members of the Class under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby causing Plaintiff and other members of the Class to suffer economic damages.

100.    Therefore, Plaintiff and other members of the Class seek all available remedies, damages, and awards under the Magnuson-Moss Warranty Act.

101.    Plaintiff and Class members gave timely notice to Defendant of Defendant's breach of express warranty, breach of implied warranty of fitness for particular purpose, and violation of the Magnusson-Moss Warranty Act, individually and on behalf of all members of the Plaintiff Class, directly through a Notice Letter sent to Defendant on December 26, 2013.

**FIFTH CAUSE OF ACTION:**
**<u>NEGLIGENT MISREPRESENTATION</u>**
**(By Plaintiff and the Proposed Class Against Defendant)**

102.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through sixty-four (64) of this Complaint as if fully set forth herein verbatim.

103.    Throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product claiming it promotes heart health, such as on the Product's packaging, labeling, and/or other in-store advertisements or statements, despite the fact that the Product does not promote heart health.

104.    Defendant made incorrect representations and/or omissions of fact regarding the Product, as alleged above.

105.    If Defendant's representations and/or omissions were not intentionally or recklessly made, then Defendant was negligent in making the misrepresentations and/or omissions at issue because it should have known the Product does not promote heart health.

106.    Plaintiff and members of the Class relied on Defendant's misrepresentations and/or omissions.

107.    The factual misrepresentations and/or omissions committed by Defendant, as described above, were material to Plaintiff and members of the Class.

108.    Plaintiff and other members of the Class relied upon the incorrect representations and/or omissions made about the Product to their detriment, in that Plaintiff and other members of the Class paid the purchase price for the Product based upon the incorrect representations and/or omissions.

109.    Had Plaintiff and other members of the Class known the truth about the Product, they would not have purchased the Product.

110.    Therefore, Plaintiff and other members of the Class seek all available remedies, damages, and awards for Defendant's negligent misrepresentations.

**SIXTH CAUSE OF ACTION:**
**UNJUST ENRICHMENT**
**(By Plaintiff and the Proposed Class Against Defendant)**

111.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through sixty-four (64) of this Complaint as if fully set forth herein verbatim.

112.    Throughout the Class Period, Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product claiming it promotes heart health, such as on the Product's packaging, labeling, and/or other in-store advertisements or statements, despite the fact that the Product does not promote heart health.

113.    In its marketing and advertising, Defendant has made false and misleading statements and/or omissions regarding the Product.

114.    Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Product. Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Product to Plaintiff and other Class members.  Defendant profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

115.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein.

116.    Defendant is aware that the claims and/or omissions that it makes about the Product are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

117.     Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

118.     Accordingly, the Product is valueless such that Plaintiff and Class members are entitled to restitution in an amount not less than the purchase price of the Product paid by Plaintiff and Class members during the Class Period.

119.     In addition, Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product, over and above what they would have paid had the Product not claimed to promote heart health.

120.     Plaintiff and Class members are also entitled to disgorgement of the profits Defendant derived from the sale of the Product.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action alleged above, as follows:

A.     For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representatives of the Class, and designating Plaintiff's attorneys as Class counsel;

B.     For an order enjoining Defendant from pursuing the policies, acts, and practices alleged in this Complaint;

C.     For an order requiring Defendant to pay full restitution to Plaintiff and all members of the Class;

D.     For an order requiring Defendant to disgorge all ill-gotten gains flowing from the conduct alleged in this Complaint;

E.     For an award of actual damages in an amount to be determined at trial;

F.      For an award of reasonable attorneys' fees;

G.      For an award of costs of this suit;

H.      For an award of pre- and post-judgment interest on any amounts awarded; and

I.      Providing such further relief as may be just, appropriate, or proper.

**<u>JURY DEMAND</u>**

Plaintiff respectfully demands a trial by jury on all issues so triable.


**Respectfully Submitted,**

**THE LAW OFFICES OF
HOWARD W. RUBINSTEIN, P.A**.

Dated:  March 5, 2014                    By: _/s/  Howard W. Rubinstein_
                                             Howard W. Rubinstein, Esq.
                                         Fla. Bar No.: 104108)
                                         howardr@pdq.net
                                         1615 Forum Place, Suite 4C
                                         West Palm Beach, FL 33401
                                         (800) 436-6437
                                         (415) 692-6607 (fax)

                                         *Attorneys for Plaintiff and the Proposed Class*

# EXHIBIT

# 1

Niacin, also known as Vitamin B-3, is found in foods such as beef, chicken, tuna, peanuts, avocados and potatoes. Niacin as Inositol Hexanicotinate is also known as Flush Free Niacin, which means that you don't experience an uncomfortable "flush" when taking this product.** Niacin promotes heart health, energy metabolism and nervous system health.* Niacin also helps maintain healthy functions of the digestive system and skin, as well as supporting healthy hair!*

**No** Artificial Color, Flavor or Sweetener, **No** Preservatives, **No** Sugar, **No** Starch, **No** Milk, **No** Lactose, **No** Soy, **No** Gluten, **No** Wheat, **No** Fish. Sodium Free.

**Nutrition Questions or Comments?**
Call NutraPhone® 1-800-433-2990
Mon. - Sat. 9 AM - 7 PM ET
For educational health tips and to join our
money saving Healthy Rewards™ program, visit
www.NaturesBounty.com

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.



**Prod. No. 1660**  B1660  15P  JAZ

## NATURE'S BOUNTY®

### FLUSH FREE

# Niacin

## Inositol Hexanicotinate
## 500mg

**Promotes:**
♦ **Heart Health***
♦ **Energy Metabolism***
♦ **Nervous System Health***



**50 capsules**   VITAMIN SUPPLEMENT

**DIRECTIONS:** For adults, take one (1) to two (2) capsules daily, preferably with a meal.

## Supplement Facts
Serving Size 1 Capsule

| Amount Per Serving | %Daily Value |
|---|---|
| Niacin (as Inositol Hexanicotinate) 400 mg | 2,000% |
| Inositol (as Inositol Hexanicotinate) 100 mg | *** |

***Daily Value not established.

**Other Ingredients:** Gelatin, Vegetable Stearic Acid, Silica, Vegetable Magnesium Stearate.

**WARNING:** Not intended for use by pregnant or nursing women. If you are taking any medications, consult your doctor before use. Discontinue use and consult your doctor if any adverse reactions occur. Keep out of reach of children. Store in a cool, dry place. Do not use if seal under cap is broken or missing.

**NOTICE:** Most people should not experience flushing when using this product. However, a few sensitive individuals may experience some flushing. Do not take on an empty stomach.

Carefully Manufactured by
**NATURE'S BOUNTY, INC.**
Bohemia, NY 11716 U.S.A.
©2011 Nature's Bounty, Inc.



0 74312 01660 8