UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL CASE NO.  14-cv-60580-WJZ

ANTHONY MAZZEO, individually and on
behalf of all others similarly situated,

                 Plaintiff,

v.

NATURE'S BOUNTY, INC.,
a New York corporation,

                 Defendant.

_____/

**MEMORANDUM OF LAW OF DEFENDANT NATURE'S BOUNTY, INC. IN
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.................................................. 4

    A.   Flush Free Niacin And Its Label................................................................ 4

    B.   Plaintiff's Complaint Contends That The "Promotes Heart Health"
        Statement Is False, But Alleges No Facts To Plausibly Show That Flush
        Free Niacin Does Not Support Heart Health In Some Way. ....................... 5

    C.   Plaintiff's Complaint.................................................................................. 6

III.  Legal Argument ................................................................................................ 6

    A.   All Of Plaintiff's Claims Must Be Dismissed Because Plaintiff Has Failed
        To Allege An Actionable Misrepresentation. ........................................... 7

    B.   All Of Plaintiff's Claims Fail For Lack Of Causation.......................... 12

    C.   All Of Plaintiff's Claims Fail For Lack Of Injury .............................. 13

    D.   All of Plaintiff's Claims Sound In Fraud, But Plaintiff Fails To Satisfy
        Rule 9(b). ............................................................................................ 14

    E.   Plaintiff's Claim Must Be Dismissed For Other Reasons As Well ......... 16

        1.   Plaintiff's Implied And Express Warranty Claims (Count II-III) Must Be
            Dismissed For Lack of Privity. ...................................................... 16

        2.   Plaintiff's MMWA Claim (Count V) Fails For Many Reasons.............. 17

        3.   Plaintiff's Unjust Enrichment Claim (Count VI) Must Be Dismissed .... 19

IV.   CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Al C. Rinaldi, Inc. v. Back to Rock Music School, Inc.*,
No. Civ. A. 00-5477, 2006 WL 785250 (E.D. Pa. Mar. 27, 2006)............................................9

*Allen v. Similasan Corp.*,
No. 12CV0376–BTM–WMC, 2013 WL 2120825 (S.D. Cal. May 14, 2013)......................16

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
905 F. Supp. 2d 1334 (S.D. Fla. 2012) ...............................................................................13

*Am. Dental Assocs. v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ..............................................................................................7

*Arroyo v. Pfizer, Inc.*,
No. 12-4030, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013)..........................................8, 15, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................7, 10

*Bailey v. Monaco Coach Corp.*,
168 Fed. App'x 893 (11th Cir. 2006) ............................................................................16, 18

*Bates v. Gen. Nutrition Centers, Inc.*,
897 F. Supp. 2d 1000 (C.D. Cal. 2012) ................................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................6, 7, 10

*Brazil v. Dole Food Co., Inc.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) ...............................................................................18

*Breakstone v. Caterpillar, Inc.*,
No. 09–23324–CIV, 2010 WL 2164440 (S.D. Fla. May 26, 2010) ......................................12

*Brooks v. Blue Cross & Blue Shield of Fla.*,
116 F.3d 1364 (11th Cir. 1997) ..............................................................................................5

*Coral Gables Dist., Inc. v. Milich*,
992 So. 2d 302 (Fla. 3d DCA 2008) .....................................................................................13

*David v. Am. Suzuki Motor Corp.*,
629 F. Supp. 2d 1309 (S.D Fla. 2009) ..................................................................................16

*Dolphin LLC v. WCI Comtys, Inc.*,
715 F.3d 1243 (11th Cir. 2013) ............................................................................................12

*Dunham–Bush, Inc. v. Thermo–Air Service, Inc.*,
   351 So. 2d 351 (Fla. 4th DCA 1977) ............................................................13

*Eckler v. Wal-Mart Stores, Inc.*,
   No. 12–CV–727–LAB–MDD, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ...............8, 9, 10

*Edmunson v. Procter & Gamble Co.*,
   No. 10–CV–2256–IEG NLS, 2011 WL 1897625 (S.D. Cal. May 17, 2011) ........................16

*Elizabeth N. v. Riverside Group, Inc.*,
   585 So. 2d 376 (Fla. 1st DCA 1991) ............................................................17

*Fields v. Mylan Pharm., Inc.*,
   751 F. Supp. 2d 1257 (N.D. Fla. 2009)..........................................................17

*Guerrero v. Target Corp.*,
   889 F. Supp. 2d 1348 (S.D. Fla. 2012) ........................................................8, 19

*Hairston v. South Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................................17

*Hill v. Hoover Co.*,
   899 F. Supp. 2d 1259 (N.D. Fla. 2012).......................................................17, 19

*Hopper v. Solvay Pharm., Inc.*,
   588 F.3d 1318 (11th Cir. 2009) ...................................................................7

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
   No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................................18

*In re Scotts EZ Seed Litig.*,
   No. 12-4727, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) ......................................18

*In re Shop-Vac*,
   964 F. Supp. 2d 355 (M.D. Pa. 2013) ..........................................................18

*Jones v. TT of Longwood, Inc.*,
   No. 6:06–cv–651–Orl–19DAB, 2007 WL 2298020 (M.D. Fla. Aug. 7, 2007)....................13

*Jovine v. Abbott Labs., Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) .........................................................19

*Karhu v. Vital Pharm., Inc.*,
   No. 13–60768–CIV, 2014 WL 815253 (S.D. Fla. March 3, 2014) ...........................7, 12, 18

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ................................................................13

*Lamm v. State Street Bank and Trust*,
    --- F.3d ---, No. 12-15061, 2014 WL 1410172 (11th Cir. 2014) ........................15

*Licul v. Volkswagen Group of Am., Inc.*,
    No. 13-61686-CIV, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)...........................20

*Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*,
    530 F.3d 1339 (11th Cir. 2008) ........................................................................14

*Llado–Carreno v. Guidant Corp.*,
    No. 09–20971, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011).................................15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................7

*Mardegan v. Mylan*,
    No. 10–14285–CIV–MARTINEZ–LYNCH, 2011 WL 3583743 (S.D.Fla. Aug. 12,
    2011) ................................................................................................................17

*Mazzeo v. USPlabs, LLC*,
    No.13-cv-62639 (S.D. Fla.) ...............................................................................6

*McCrary v. Elations Co., LLC*,
    No. EDCV 13-0242 JGB, 2013 WL 6402217 (C.D. Ca. Apr. 24, 2013) ................11

*Mesa v. BMW of North America, LLC*,
    904 So. 2d 450 (Fla. 3d DCA 2005) ..................................................................16

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ........................................................................15

*Nautica Int'l, Inc. v. Intermarine USA, LP.*,
    5 F. Supp. 2d 1333 (S.D. Fla. 1998) .................................................................19

*O'Connor v. Kawasaki Motors Corp., U.S.A.*,
    699 F. Supp. 1538 (S.D. Fla. 1988) ..................................................................17

*Pa. Emp. Benefit Trust Fund v. Astrazeneca Pharm. LP*,
    No. 6:09-cv-5003-Orl-22Dab, 2009 WL 2231686 (M.D. Fla. July 20, 2009) ........12

*Padilla v. Costco Wholesale Corp.*,
    No. 11 C 7686, 2013 WL 195769 (N.D Ill. Jan. 16, 2013) ...................................9

*Padilla v. Costco Wholesale Corp.*,
    No. 11 C 7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012) ...........................8, 13

*Prohias v. Pfizer, Inc.*,
    490 F.Supp.2d 1228 (S.D. Fla. 2007) ................................................................19

iv

*Route v. Mead Johnson Nutrition Co.,*
No. 12-7350, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .................................................18

*Skelton v. GM Corp.,*
660 F.2d 311 (7th Cir. 1981) .........................................................................................18

*Souran v. Travelers Ins. Co.,*
982 F.2d 1497 (11th Cir. 1993) ......................................................................................12

*Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.,*
524 F.3d 1229 (11th Cir. 2008) ......................................................................................13

*Stewart v. Smart Balance, Inc.,*
2012 WL 4168584 (D.N.J. June 26, 2012) ......................................................................18

*T.W.M. v. Am. Med. Sys., Inc.,*
886 F. Supp. 842 (N.D. Fla. 1995) ..................................................................................17

*TAAM Assoc. Inc. v. Housecall Med. Resources, Inc.,*
No. 1:96CV2214 A JEC, 1998 WL 1745361 (N.D. Ga. March 30, 1998) ...........................15

*Toback v. GNC Holdings Inc.,*
No. 13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2012) .....................................9

*Vega v. T-Mobile USA, Inc.,*
564 F.3d 1256 (11th Cir. 2009) ......................................................................................20

*Virgilio v. Ryland Group, Inc.,*
680 F.3d 1329 (11th Cir. 2012) ......................................................................................20

*Wagner v. First Horizon Pharma. Corp.,*
464 F.3d 1273 (11th Cir. 2006) ......................................................................................14

*Wiand v. Waxenberg,*
611 F. Supp. 2d 1299 (M.D. Fla. 2009) ...........................................................................20

*Witt v. Howmedica Osteonics Corp.,*
No. 13-cv-20742, 2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) .......................................17

*Yumul v. Smart Balance, Inc.,*
733 F.Supp.2d 1117 (C.D. Cal. 2010) .............................................................................16

**STATUTES**

15 U.S.C. § 2301(6)(A) ....................................................................................................18

15 U.S.C. §§ 2301–2312 ..................................................................................................17

15 U.S.C. § 2311(d) .........................................................................................................17

**FEDERAL RULE S OF CIVIL PROCEDURE**

Fed. R. Civ. P. 9(b) ............................................................................................... passim

Fed. R. Civ. P. 12(b)(1)...................................................................................................7

Fed. R. Civ. P. 12(b)(6)............................................................................................ passim

## I.     INTRODUCTION

Plaintiff contends that he made one purchase of Flush Free Niacin, a vitamin supplement that contains Vitamin B-3 but does not produce an adverse flushing effect, from a retailer at some undisclosed point over the last four years.  Plaintiff does not allege that he suffered any adverse health effect from the product or that it poses any health or safety risks.  Plaintiff does not allege that it lacks any of the ingredients that the product's label says it has.  Plaintiff does not even allege he took the product or that it did not work for him.

Instead, Plaintiff contends that he was purportedly defrauded into purchasing Flush Free Niacin because one of the several statements on the product's label states that it "promotes heart health."  Plaintiff contends that this statement is false because undisclosed "studies" show that Flush Free Niacin is not effective in "'managing high cholesterol'" and "does not provide lipid benefits."  (Compl. ¶ 14, ECF No. 1).  Even though the label makes no mention of treating cholesterol or providing lipid benefits and expressly disclaims that it is not intended to "treat" or "prevent" any "disease," Plaintiff asserts six claims based upon this so-called misrepresentation: violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I); breach of implied warranty of fitness for particular purpose (Count II); breach of express warranty (Count III); violation of the Magnuson-Moss Warranty Act ("MMWA") (Count IV); negligent misrepresentation (Count V); and unjust enrichment (Count VI).

All of Plaintiff's claims fail as a matter of law for multiple independent reasons.  As an initial matter, all of Plaintiff's claims are based on the legal theory that the "promotes heart health" statement on the label of Flush Free Niacin is false and misleading, yet this statement could only be false and misleading if Flush Free Niacin, which contains Vitamin B-3, does not support or encourage cardiovascular health *in any way*.  Plaintiff's Complaint does not—and cannot—plead facts to plausibly make this showing.  Plaintiff asserts no facts to show that Flush

1

Free Niacin does not have any cardiovascular benefit.  In fact, even though the "promotes heart health" statement can only be disproved through scientific testing, Plaintiff fails to discuss a single scientific study in his Complaint or to allege a single scientific fact to support his "misrepresentation" legal theory.

Instead, Plaintiff relies almost entirely upon press release from a supplier of a competitive product to Flush Free Niacin that references a narrow study discussing the limited benefits of "inositol hexanicotinate"—the active ingredient of Flush Free Niacin—for treatment of cholesterol.  But Flush Free Niacin makes no representations about treating cholesterol, and even Plaintiff acknowledges that this is only "[o]ne method of promoting heart health."  (Compl. ¶ 12).  The label for Flush Free Niacin also expressly disclaims that because it is not a medicine, it is "not intended to diagnosis, treat, cure or prevent any disease."  (Label, Ex. 1 to Compl.).  Put simply, because Plaintiff has not and cannot allege any facts to show that Flush Free Niacin does not encourage "heart health" in some way, all of Plaintiff's claims fail as a matter of law.

Second, all of Plaintiff's claims fail for lack of causation.  Plaintiff admits that he only purchased Flush Free Niacin based upon his "interpretation" that the product "***will improve*** his heart health."  (Compl. ¶ 39 (emphasis added)).  But the label does not guarantee that the product "will improve" heart health, only that Flush Free Niacin "promote[s]" or encourages heart health. Thus, Plaintiff's decision to purchase Flush Free Niacin (*i.e.*, his alleged injury) was not based upon any purported misrepresentation concerning whether the product manages cholesterol or increases lipid production.  The purchase was based upon his own misinterpretation of the label as somehow guaranteeing that his cardiovascular health will improve.  Plaintiff's allegations therefore foreclose Plaintiff from satisfying his causation burden.

Third, all of Plaintiff's claims also fail because Plaintiff has not pled a cognizable injury. Plaintiff does not dispute that Flush Free Niacin contains Vitamin B-3, does not produce a flushing effect, and provides, as its label states, "energy metabolism and nervous system health." Nor does Plaintiff allege that the product did not work *for him* or that it failed to provide any cardiovascular benefit of any type *to him*. Likewise, Plaintiff has not alleged any facts to suggest that the Product was worth less than what he paid for it because it purportedly does not manage high cholesterol or impact lipid production—particularly when the label makes no promise to do so. Thus, there are simply no allegations that Plaintiff did not receive the benefit of his bargain: a vitamin supplement with Vitamin B-3 that does not produce a flushing effect.

Fourth, all of Plaintiff's claims must be dismissed because, as alleged, each claim sounds in fraud, but the Complaint lacks the "who, what, when, where, why and how" of any alleged fraud as required by Rule 9(b). Plaintiff fails to allege the details of why the "promotes heart health" statement is supposedly false. Nor does Plaintiff allege many of the necessary details about his purchase to show how he purportedly was defrauded, including when he made the purchase, what he knew about Flush Free Niacin when he made the purchase, what aspects of the label he reviewed, what other products he considered, and the cost of any comparable products. Plaintiff *does not even allege that he took the product*, much less provide any details about his experience with Flush Free Niacin. Plaintiff's Complaint therefore fails to satisfy the heightened pleading requirements of Rule 9(b).

In addition to Plaintiff's failure to allege the essential elements of his claims, many of Plaintiff's claims also fail for multiple additional reasons:

- The implied and express warranty claims (Counts II-III) fail because Plaintiff purchased the product from a retailer, and, thus, he cannot show the required privity of contract between himself and Defendant Nature's Bounty ("Nature's Bounty").

- The MMWA claim (Count V) fails because: (1) vitamin supplements are excluded from the scope of the MMWA; (2) the "promote heart health" statement on Flush Free Niacin's label does not constitute a warranty under the MMWA; and (3) the MMWA incorporates state warranty law and therefore fails for lack of privity.

- The unjust enrichment claim (Count VI) fails because: (1) this claim is based upon the same conduct as Plaintiff's legal claims, and, therefore, Plaintiff alleges the existence of an adequate legal remedy; and (2) Plaintiff has not alleged that the retention of any alleged benefit by Nature's Bounty would be unjust.

Because Plaintiff has not stated and cannot state a plausible claim based upon the label of Flush Free Niacin, Plaintiff's Complaint should be dismissed in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Flush Free Niacin And Its Label

Plaintiff alleges that Nature's Bounty sells Flush Free Niacin, a vitamin supplement. (*Id.* ¶¶ 1, 8). Niacin is the common name for Vitamin B-3 and has various chemical compositions. (*Id.* ¶ 11). As Plaintiff concedes, Niacin "has been studied to prevent or improve symptoms of high cholesterol, heart disease, diabetes, osteoarthritis and potentially other conditions." (*Id.*) Side effects of Niacin, however, include flushing of the skin, upset stomach, headache, dizziness and blurred vision. (*Id.* ¶ 13).

Flush Free Niacin is an over-the counter form of Niacin made of inositol hexanicotinate ("IHN") that eliminates many of the side-effects of traditional Niacin. As Plaintiff admits, it does not cause flushing of the skin. (*Id.* ¶¶ 13, 14). As stated on the front and back of its label, Flush Free Niacin "promotes heart health, energy metabolism and nervous system health." (Label, Ex. 1 to Compl.). The back of the label further states that "Niacin helps maintain healthy functions of the digestive system and skin, as well as supporting healthy hair!" (*Id.*) However, the label expressly makes the consumer aware that because it is not a medicine, it is "not intended to diagnosis, treat, cure or prevent any disease." (*Id.*).

4

**B.**   **Plaintiff's Complaint Contends That The "Promotes Heart Health" Statement Is False, But Alleges No Facts To Plausibly Show That Flush Free Niacin Does Not Support Heart Health In Some Way**

As noted above, Flush Free Niacin is not a medicine and its label makes no representations about cholesterol or lipid benefits and expressly disclaims that the product is not "intended" to "treat" or "prevent any disease." (*Id.*). Nonetheless, Plaintiff alleges that the "promotes heart health" statement on the label is false because it "does not provide lipid benefits" and is "'ineffective in managing cholesterol.'" (Compl. ¶ 14). Plaintiff does not allege any facts or attach any scientific studies or data for this contention. Instead, Plaintiff's Complaint relies exclusively upon: (a) a February 2013 internet press release from a company that claims to be a leader in "Niacin production" (the "Press Release"); and (b) a March 2007 interview article with a doctor in Wisconsin (the "Interview"). (*Id.* ¶¶ 11, 14).[1]

The Press Release purportedly summarizes a study published in the January 2013 Journal of Clinical Lipidology, which addressed whether IHN is effective in managing high cholesterol. (*See* Press Release, *Study Finds Extended Release Niacin, but not IHN, Effective in Lowering Cholesterol Levels* (Feb. 6, 2013), attached hereto as Exhibit A). Based exclusively upon this study, the Press Release states that a product sold by Lonza Corporation can help lower cholesterol, but that IHN produced "no ***significant*** improvement in blood lipids." (*Id.* at 1 (emphasis added)). The Press Release does not state that IHN has no cardiovascular benefits.

The Interview took place more than seven years ago (three years prior to the alleged class period) and describes the many cardiovascular and other health benefits of Niacin, including reducing heart attack risk and cardiovascular disease risk. (William Davis, M.D., *Ask the Doctor: Using Niacin to Improve Cardiovascular Health*, LE Magazine, March 2007, attached hereto as

---

[1]    Because they are referenced and relied upon in the Complaint, the Court may consider both the Press Release and Interview in resolving this motion to dismiss. *See, e.g., Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (applying rule).

Exhibit B).  The interviewer then states, without explanation, that certain niacin supplements do not work in his "experience."  (*Id.* at 2).  No scientific studies are cited to support his position.

### C.   Plaintiff's Complaint

Plaintiff allegedly purchased Flush Free Niacin at some unspecified time during the last four years at an undisclosed Walgreen's Pharmacy in Broward County, Florida.  (*Id.* ¶¶ 7, 37, 38, 43).  Even though the product is not a medicine, offers no assurance that it will "improve" a consumer's cardiovascular health, and expressly states that it "not intended" to "treat" or "prevent any disease" (including any cardiovascular disease), Plaintiff purportedly purchased the product based solely upon the belief that "consuming the Product *will **improve*** Plaintiff's heart health." (*Id.* ¶ 39 (emphasis added)).  Plaintiff, however, does not allege that he used the product, that it did not work for him, or that he did not receive any heart-related benefits.[2]

Based upon the conclusory assertions that Flush Free Niacin "does not provide lipid benefits" and is "'ineffective in managing high cholesterol'" (*id.* at ¶ 14), Plaintiff brings six claims.  (*Id.* at ¶¶ 65-120).  As described below, Plaintiff's legal theory lacks merit as a matter of law because nothing was misrepresented on the label and because Plaintiff cannot satisfy any of the other core elements of his claims.

## III.   LEGAL ARGUMENT

Under Rule 12(b)(6), an action must be dismissed when the plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To plead a *viable* cause of action, the allegations must transcend the "speculative," "conceivable," and "possib[le]," and must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2]    Plaintiff also appears to be a named plaintiff in at least one other consumer-based putative class action that is pending before this Court and that has been brought by the same counsel who represents Plaintiff here.  In that action, captioned *Mazzeo v. USPlabs, LLC*, No.13-cv-62639 (S.D. Fla.), Plaintiff contends that he was defrauded into purchasing energy and weight loss dietary supplements that lacked adequate labeling and brings the same legal claims at issue here.

544, 555, 556–57, 566–67, 570 (2007).  In making this determination, the Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they satisfy the elements of each claim and show more than "the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *see also Am. Dental Assocs. v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).[3]

In addition, when claims sound in fraud, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  For any claim that sounds in fraud, the plaintiff bears a heavy burden of pleading "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them."  *Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1324 (11th Cir. 2009) (quotation marks omitted).

Here, applying these standards, Plaintiff's Complaint fails to state a claim under *Iqbal*, *Twombly*, and Rule 9(b).  For multiple reasons, all of Plaintiff's claims fail as a matter of law.[4]

**A.      All Of Plaintiff's Claims Must Be Dismissed Because Plaintiff Has Failed To Allege An Actionable Misrepresentation.**

As alleged, all of Plaintiff's claims require Plaintiff to plausibly demonstrate that the "promote hearth health" statement on Flush Free Niacin's label is false or misleading.  (Compl. ¶¶ 67-68, 75, 85, 94-95, 103-04, 112-13).  Plaintiff has failed to allege any facts to do so.

---

[3]      Plaintiff's complaint is also subject to dismissal under Rule 12(b)(1), which requires the Court to grant a motion to dismiss for lack of subject matter jurisdiction if the plaintiff lacks Article III standing. Fed. R. Civ. P. 12(b)(1). To demonstrate standing, a plaintiff must plead facts showing, among other requirements, that it has suffered a cognizable "injury" and that there is a "causal connection between the injury and the conduct complained of . . . ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). As described herein, Plaintiff cannot do so.

[4]      Plaintiff also cannot meet his burden of satisfying the requirements for class certification, including the requirement that the proposed class be ascertainable. *See, e.g., Karhu v. Vital Pharm., Inc.*, No. 13–60768–CIV, 2014 WL 815253, at *3 (S.D. Fla. March 3, 2014) (denying class certification because plaintiff had "not suggested any practical means of verifying class membership through existing evidence, and the Court will not allow individuals to identify themselves as class members"). Because Plaintiff's Complaint fails to state a claim under *Iqbal*, *Twombly*, and Rule 9(b), however, Nature's Bounty has not moved at this juncture to strike Plaintiff's class allegations.

To succeed on misrepresentation-based claims that challenge the truthfulness of a statement on a product's label, a plaintiff may not just contend that the claim is false, but must allege specific facts to show that the representation is, in fact, false. *See, e.g., Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355-56 (S.D. Fla. 2012) (dismissing misrepresentation-based claims because plaintiff relied upon conclusory allegations that "Defendant's honey did not contain pollen" without providing specific facts); *see also Arroyo v. Pfizer, Inc.*, No. 12–4030, 2013 WL 415607, at **4-5 (N.D.Cal. Jan. 31, 2013) (dismissing false labeling claims regarding nutritional supplement because allegation that dietary supplement "does not support healthy immune function" is nothing more than improper "conclusory statement[]" and because plaintiff failed to allege scientific facts to show why label is false).  When, like here, the statement on the label involves technical or scientific matters, a plaintiff also must allege the existence of actual scientific studies or testing to plausibly demonstrate that the statement is purportedly not true. *Id.*; *see also Eckler v. Wal-Mart Stores, Inc.*, No. 12–CV–727–LAB–MDD, 2012 WL 5382218, at **3 n.2 & 5-6 (S.D. Cal. Nov. 1, 2012) (dismissing misrepresentation-based claims based upon labeling of dietary supplement and concluding that it is "really only scientific testing that can show a supplement's claims to truly be false and/or misleading"); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 WL 2397012, at *4 (N.D. Ill. June 21, 2012) (dismissing claim for false advertising based upon statements that dietary supplements would protect and build cartilage because plaintiff failed to point to any studies that demonstrated the alleged falsity of the products' statements).

Applying these principles, numerous courts have dismissed false labeling claims against sellers of dietary supplements when the plaintiff fails to allege facts to show that a scientific study has demonstrated the purported falsity of the particular health-related statement that the

plaintiff is challenging. *See, e.g., Toback v. GNC Holdings Inc*., No. 13-80526-CIV, 2013 WL 5206103, at \*\*5-6 (S.D. Fla. Sept. 13, 2013) (dismissing false labeling claim because Plaintiff's allegations "regarding the inefficacy of glucosamine and chondroitin simply fail to address the efficacy of the [product-in-question's] multifarious composition in promoting joint health, and thus fail to raise [p]laintiff's claim, that the [product-in-question] as a whole does not function as advertised, above the speculative level"); *Padilla v. Costco Wholesale Corp*., No. 11-C-7686, 2013 WL 195769, at \*3 (N.D. Ill. Jan. 16, 2013) (dismissing misrepresentation-based claims because plaintiff's alleged studies did not assess effectiveness of entire product); *Eckler*, 2012 WL 5382218, at \*6 (dismissing misrepresentation-based claims because alleged studies did not show "what [the plaintiff] claims they do, and the Court would be left with no facts from which to infer that [defendant] is liable for false advertising").

Here, the label states that Flush Free Niacin "promotes heart health." Plaintiff does not suggest how this phrase should reasonably be interpreted. However, the term "promote" means "support" or "encourage,"[5] and the label expressly disclaims that the product is "intended" to "treat, cure or prevent any disease." Thus, at a minimum, for the label to be false, Plaintiff needs to allege facts to show that Flush Free Niacin—which Plaintiffs do not dispute contains Vitamin B-3 and encourages energy metabolism and nervous system health—does not support or encourage cardiovascular health *in any way*.

Plaintiff has not and cannot do so. Plaintiff relies almost exclusively upon legal conclusions and other conclusory and unsupported allegations that Flush Free Niacin does not "promote heart health":

---

[5]     *See* Cambridge Dictionaries Online, http://dictionary.cambridge.org/us/dictionary/american-english/promote_2 (last visited April 24, 2014) (defining promote as "to encourage or support something, or to help something become successful"); *Al C. Rinaldi, Inc. v. Back to Rock Music School, Inc*., No. Civ. A. 00-5477, 2006 WL 785250, at \*3 n.5 (E.D. Pa. Mar. 27, 2006) (defining promote as "to encourage the popularity, sale, development or existence of something") (*citing* Cambridge Advanced Learner's Dictionary).

- "Flush Free Niacin … does not have any effect on any condition that improves or impacts heart health." (*Id.* ¶ 2).

- "Defendant has sold the Product claiming to promote heart health, despite the fact that it does not promote heart health." (*Id.* ¶ 15).

- "Therefore, Defendant's statements on the front labeling of the Product and promotion of the Product are false, misleading, and likely to deceive reasonable consumers . . . ." (*Id.* ¶ 17).

- "At the time of purchase Plaintiff did not know that the product fails to promote heart health, despite claiming to do so." (*Id.* ¶ 40).

(*See also id.* at ¶¶ 1-4, 15-36, 42-120). These conclusory allegations fail to plausibly ***allege facts to show*** that Flush Free Niacin has no cardiovascular benefit. They amount to nothing more than the legal conclusion that the label is false. Thus, they must be rejected under *Iqbal* and *Twombly* and do not support Plaintiff's claims.

Once these conclusory allegations are properly disregarded, Plaintiff's Complaint contains nothing more than references to unidentified "studies" that are not attached or discussed in the Complaint. (Compl. ¶ 14). In fact, Plaintiff acknowledges that Niacin "has been studied to prevent or improve symptoms" concerning many areas of heart health, including "high cholesterol," "heart disease," and "potentially other conditions" (*id.* at ¶ 11), yet fails to identify a single scientific fact to show that Flush Free Niacin offers ***no*** cardiovascular benefits. For this reason alone and consistent with *Guerrero, Arroyo, Padilla, Toback*, and *Eckler*, Plaintiff has failed to plead an actionable misrepresentation or omission.

Worse yet, Plaintiff concedes that the unidentified "studies" he purportedly has are limited to "lipid production" and "managing cholesterol." (Compl. ¶ 14.) However, as Plaintiff acknowledges, this involves just "[o]ne method of promoting heart health" (*Id.* ¶ 12), and, thus, cannot on its own render the label false or misleading. Moreover, the label for Flush Free Niacin makes ***no representations*** about cholesterol or lipid benefits. And, in fact, the label for Flush

10

Free Niacin expressly disclaims that it is intended to treat high cholesterol when it states that "[t]his product is not intended to diagnose, treat, cure or prevent any disease." (Label, Ex. 1 to Compl.).  The label of Flush Free Niacin is not and cannot be false when it tells consumers that the product is not a medicine and does not do the very thing—treat or prevent cholesterol and heart-related disease—that, according to Plaintiff, renders the label false.  *See, e.g., McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB, 2013 WL 6402217, at *4 (C.D. Ca. Apr. 24, 2013) (dismissing claims that "joint comfort, flexibility, and health" statements on product were false in that they were not effective in treatment of osteoarthritis, because product expressly stated that it was "not intended to diagnose, treat, cure, or prevent any disease").

In the footnotes of his Complaint, Plaintiff cites to the Press Release and Interview as the basis for his misrepresentation claims—not scientific studies.  But even if these documents could be used to support Plaintiff's burden to plead actual facts about the health benefits of Flush Free Niacin (and they cannot), neither comes close to showing that Flush Free Niacin does not promote, in some way, cardiovascular health.  They did not specifically test the Flush Free Niacin product at issue in this case; they do not purport to evaluate all aspects of "heart health" for Flush Free Niacin or IHN in general; and they offer no scientific analysis.  In fact, only the Press Release mentions a scientific study, and it acknowledges that the study was limited to the effectiveness of IHN for treating cholesterol—not whether the "heart health" representation is accurate or whether Flush Free Niacin offers any heart-related benefits.[6]

Put simply, Plaintiff fails to allege any scientific evidence or data showing that Flush Free Niacin does not promote heart health *in some way*.  At most, Plaintiff contends that Flush

---

[6]        Further confirming that Plaintiff's claims are flawed as a matter of law, Plaintiff makes no allegations to demonstrate that the statement on the label was false *as to him*.  Plaintiff does not allege any facts about his experience with Flush Free Niacin or that he even consumed the product.   Nor does Plaintiff allege that that the Vitamin B-3 in the product was not good for his heart.

Free Niacin fails to "provide lipid benefits" or "manage cholesterol," but there is nothing on the label of the product that represents anything to the contrary. Because there are simply no facts to dispute that Flush Free Niacin provides some heart-related benefit, all of Plaintiff's claims must be dismissed with prejudice.

### B.   All Of Plaintiff's Claims Fail For Lack Of Causation.

All of Plaintiff's claims require, at a minimum, a causal link between the alleged misrepresentation and the alleged injury, if not actual reliance by the consumer on the misrepresentation.[7]  Here, even if the label for Flush Free Niacin does somehow misrepresent that it "provide[s] lipid benefits" or "manage[s] cholesterol" (and it does not), Plaintiff's *own allegations* confirm that it was not that misrepresentation which caused Plaintiff's injury: instead, it was Plaintiff's erroneous and objectively unreasonable reading of the label.

Plaintiff does not allege that he purchased the product because he thought it might help manage cholesterol or provide some lipid benefits. Rather, Plaintiff contends that he purchased Flush Free Niacin based upon his "interpret[ation]" of the label "as meaning that consuming the Product *will improve* Plaintiff's heart health." (Compl. ¶ 39 (emphasis added)). But that purported guarantee of *necessarily* "improv[ing]" cardiovascular health is not made or suggested anywhere on the label. Rather, the label says the opposite—that it is not intended to "treat" or "prevent" any heart-related condition or "disease," because Flush Free Niacin is a vitamin supplement not a medicine. Thus, because Plaintiff's own allegations show that he wrongly

---

[7]     *See, e.g., Dolphin LLC v. WCI Comtys., Inc.,* 715 F.3d 1243, 1250 (11th Cir. 2013) (FDUTPA claim requires "causation"); *Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1503 (11th Cir. 1993) (negligent misrepresentation claim requires "justifiable reliance" on the allegedly false statement); *Karhu v. Vital Pharmaceuticals, Inc.,* No. 13–60768–CIV, 2014 WL 815253, at *7 (S.D. Fla. March 3, 2014) (MMWA "borrow[s] state law causes of action for breach of both written and implied warranties"); *Breakstone v. Caterpillar, Inc.,* No. 09–23324–CIV, 2010 WL 2164440, at *3 (S.D. Fla. May 26, 2010) (breach of express warranty under Florida law requires "injuries sustained by the buyer as a result of the breach of warranty"; breach of implied warranty claim under Florida law requires proof that the alleged "defect caused the injury"); *Pa. Emp. Benefit Trust Fund v. Astrazeneca Pharm. LP,* No. 6:09-cv-5003-Orl-22Dab, 2009 WL 2231686, at *5 (M.D. Fla. July 20, 2009) (dismissing unjust enrichment claim for lack of proximate causation).

viewed the product as a medicine and purchased Flush Free Niacin based upon some non-existent guarantee of "improv[ing]" his cardiovascular health (which appears nowhere on the label), Plaintiff cannot show that his alleged injury (*i.e.*, his purchase of Flush Free Niacin) was caused by the very statement that he claims is false.

### C.   All Of Plaintiff's Claims Fail For Lack Of Injury.

Like causation, proof of harm or injury is a requirement for all of Plaintiff's claims.[8] It is also a requirement for Article III standing.[9] Here, Plaintiff has failed to allege a cognizable injury for multiple reasons.

Plaintiff *concludes* that he suffered injury because the product he purchased was allegedly "worthless" (Compl. ¶ 19), but fails to allege facts to show that Flush Free Niacin did not provide *him* with any of the represented benefits. Nor can he. Plaintiff does not allege that he consumed the product or that the product somehow was not good for his heart. Indeed, there are no factual details pleaded whatsoever concerning Plaintiff's use of the product or any allegations that the product did not perform as expected for Plaintiff. Thus, Plaintiff has suffered no injury. *See, e.g., Padilla*, 2012 WL 2397012, at *3 (dismissing misrepresentation-based claim based upon labeling of dietary supplement for lack of injury because plaintiff "fails to include any allegations that the product did not work for him").

---

[8]   *See, e.g., Jones v. TT of Longwood, Inc.*, No. 6:06–cv–651–Orl–19DAB, 2007 WL 2298020, at *7 (M.D. Fla. Aug. 7, 2007) (dismissing claim under FDUTPA because "[s]ubjective feelings of disappointment are insufficient to form a basis for actual damages under the statute"); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (dismissing unjust enrichment claim because "a plaintiff cannot claim unjust enrichment where the plaintiff has derived a substantial benefit from the payment"); *Coral Gables Dist., Inc. v. Milich*, 992 So. 2d 302, 303 (Fla. 3d DCA 2008) (plaintiff must plead "injury" for negligent misrepresentation claim); *Dunham–Bush, Inc. v. Thermo–Air Service, Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977) (complaint must allege that "injuries" were sustained by buyer as a result of breach of warranty).

[9]   *See, e.g., Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("a plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint"); *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) ("Absent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, [the plaintiff] has not demonstrated a concrete injury-in-fact").

Nor can Plaintiff show that Flush Free Niacin was somehow worth less than what Plaintiff paid for it. (Compl. ¶ 29). Plaintiff does not dispute that the product contains Vitamin B-3, that it does not produce a flushing effect, and that it helps maintain health functions of the digestive and nervous systems and the skin. (Label, Ex. 1 to Compl.). Nor does Plaintiff allege any facts to show that Flush Free Niacin has *no* heart benefits. Thus, Plaintiff received exactly what he bargained for: a Vitamin B-3 product that does not cause flushing. There are simply no facts that the product is worth less because it purportedly does not have an effect on cholesterol (which is not even mentioned on the label).[10] *See, e.g., Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704-705 (D.N.J. 2011) (dismissing misrepresentation-based claims because "they received a beverage that contained the ingredients listed on its label" and allege no facts to show that "soda they bought was worth an amount of money less than the soda they consumed").

Put simply, because Plaintiff has failed to allege that the product failed to perform as expected, Plaintiff has not alleged a cognizable injury and all of his claims should be dismissed.

**D.     All of Plaintiff's Claims Sound In Fraud, But Plaintiff Fails To Satisfy Rule 9(b).**

It is well-settled that Rule 9(b) applies to all claims that sound in fraud. Fed. R. Civ. P. 9(b). As the Eleventh Circuit has made clear, claims that do not require fraud as an element still must be pleaded with the same particularity as fraud claims when "the same misrepresentation forms the basis of both the fraud and non-fraud claims." *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277–78 (11th Cir. 2006) (requiring particularized pleading when

---

[10]     To the extent Plaintiff contends that he was injured because he would have purchased a different product if not for the "promote heart health" statement (Compl. ¶ 19), this is implausible because, as discussed above, Plaintiff alleges that he purchased the product based upon his incorrect interpretation that Flush Free Niacin is guaranteed to improve heart health. Regardless, Plaintiff fails to identify the cost of any alternative product that he would have purchased. Indeed, Plaintiff can hardly claim that he was financially injured when any product that Plaintiff would have purchased --or would have been prescribed—would likely have been the same or more expensive.

the same misrepresentation supports fraud claims and non-fraud claims under Securities

Exchange Act).  That is precisely the case here.

All of Plaintiff's claims are based upon alleged "misrepresentations."  Indeed, each

claim incorporates and is based upon Plaintiff's allegation that Nature's Bounty purportedly

made "deceptive representations and/or omissions related to the Product with the intent to induce

Plaintiff's and other members of the putative Class' purchase of the Product."  (Compl. ¶ 25; *see*

*also id.* at ¶¶ 67, 76, 86, 95, 104, 113).  Thus, because each claim sounds in fraud, each of

Plaintiff's claims must satisfy Rule 9(b).[11]

To satisfy Rule 9(b), Plaintiff must plead "the who, what, when, where, and how of the

allegedly false statements and then allege generally that those statements were made with the

requisite intent." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008).

However, as discussed above, Plaintiff has failed to identify an actionable misrepresentation,

much less the details of any alleged fraud.  Indeed, Plaintiff only alleges conclusory facts to

support the assertion that the product has no cardiovascular benefits or that it otherwise fails to

perform as advertised.  This is not enough. *See, e.g., Arroyo,* 2013 WL 415607, at **8-9

(finding plaintiff did not meet the heightened pleading standard under Rule 9(b) because plaintiff

did not plead "'the who, what, when, were and how' of the misconduct charged").

In addition, Plaintiff fails to allege sufficient details to show how he was defrauded or

misled by any misrepresentation.  Plaintiff alleges that he bought Flush Free Niacin from a

Walgreen's, but does not allege details regarding how he was deceived by the label, including

---

[11]     *See, e.g., Lamm v. State Street Bank and Trust,* --- F.3d ---, No. 12-15061, 2014 WL 1410172, at *9 (11th Cir. 2014) ("Rule 9(b) heightened pleading standard applies to negligent misrepresentation claims"); *Llado–Carreno v. Guidant Corp.,* No. 09–20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (recognizing rule that Rule 9(b) applies to all claims that "sound in fraud" and holding that Rule 9(b) applies to FDUTPA claim); *TAAM Assoc. Inc. v. Housecall Med. Resources, Inc.,* No. 1:96CV2214 A JEC, 1998 WL 1745361, at *11 (N.D. Ga. March 30, 1998) ("Rule 9(b)'s requirement . . . should be imposed not only if fraud is an element of the cause of action in question, but also if the claims sounds in fraud and could thus operate to injure the defendant's reputation").

what language on the label he reviewed, what comparable products he looked at, or the prices for those products. Nor does Plaintiff allege any facts about his experience with the product, including if he even took Flush Free Niacin, in what amount, for how long, and on what dates.

Perhaps most importantly, Plaintiff also fails to identify **when** he purchased the product, much less how many times he did so or whether he was aware of the Interview or the Press Release when he purchased the product. The absence of these key facts is particularly significant because if Plaintiff purchased the product after (and with knowledge of) the publication of the March 2007 Interview or the February 2013 Press Release that he expressly relies upon in his Complaint, Plaintiff can hardly contend that he was defrauded. *See, e.g., Allen v. Similasan Corp.,* No. 12CV0376–BTM–WMC, 2013 WL 2120825, at *7 (S.D. Cal. May 14, 2013) (dismissing misrepresentation based claims under Rule 9(b) because plaintiffs failed to allege "when they bought Defendant's products"); *Edmunson v. Procter & Gamble Co.,* No. 10–CV–2256–IEG NLS, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (same); *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (same). Accordingly, all of Plaintiff's claims should be dismissed for failure to satisfy Rule 9(b).

### E.    Plaintiff's Claim Must Be Dismissed For Other Reasons As Well.

#### 1.    Plaintiff's Implied And Express Warranty Claims (Count II-III) Must Be Dismissed For Lack of Privity.

The Eleventh Circuit has held that "[u]nder Florida law, privity of contract is an essential element of a claim for breach of implied warranty." *Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 894 (11th Cir. 2006); *Mesa v. BMW of North America, LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity"). The same is true for breach of express warranty claims. *See, e.g., Witt v. Howmedica Osteonics Corp.*, No. 13-cv-20742, 2013 WL 6858395, at

*3 (S.D. Fla. Dec. 30, 2013) (dismissing express warranty claim for lack of privity); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1265-67 (N.D. Fla. 2012) (applying rule to dismiss warranty claims brought by consumer who purchased product from retailer, rather than defendant manufacturer); *Fields v. Mylan Pharm., Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009) (same); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (same); *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1543-44 (S.D. Fla. 1988) (same).  Indeed, privity is required because a "warranty, whether express or implied, is fundamentally a contract," and it is well-settled that a "contract cause of action requires privity." *Elizabeth N. v. Riverside Group, Inc.*, 585 So. 2d 376, 378 (Fla. 1st DCA 1991).[12]

Here, Plaintiff alleged that he bought Flush Free Niacin from Walgreen's, a third-party retailer.  (Compl. ¶ 38).  Thus, the requisite privity between Plaintiff and Nature's Bounty does not exist and, as a result, Plaintiff's implied and express warranty claims fail as a matter of law.

### 2.    Plaintiff's MMWA Claim (Count V) Fails For Many Reasons.

The MMWA provides a federal cause of action to enforce the terms of an implied or express warranty.  15 U.S.C. §§ 2301–2312.  Plaintiff's claim fails for multiple reasons.

First, the claim under the MMWA fails as a matter of law because the MMWA is expressly "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d); *Hairston v. South Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing MMWA claim because the FDCA regulates the labeling of beverages).  Here, the labeling of dietary supplements is governed by the Food, Drug, and Cosmetic Act and the Dietary Supplement Health and

---

[12]    Some Florida courts have held that privity is not required for a breach of express warranty claim under Florida law.  *See, e.g.*, *Mardegan v. Mylan*, No. 10–14285–CIV–MARTINEZ–LYNCH, 2011 WL 3583743, at *6 (S.D.Fla. Aug. 12, 2011) (noting that "courts applying Florida law have found exceptions allowing express warranty claims to proceed even absent privity" and that a claim's success depends on the particular facts of the case).  This appears, however, to be the minority approach.

17

Education Act. *See, e.g.*, *Bates v. Gen. Nutrition Ctrs., Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012) (holding that "the Magnuson–Moss Warranty Act claim should be dismissed because the Food, Drug, and Cosmetic Act governs written warranties on the labeling of dietary supplements"). Therefore, the MMWA is inapplicable here.

Second, Plaintiff's claim fails because the "promote heart health" statement on the label does not constitute a warranty under the MMWA. Under the MMWA, a "written warranty" means a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material . . . and affirms or promises that such material . . . is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Here, the Flush Free Niacin label does not warrant against any defect.[13] Moreover, although the label makes reference to "promoting heart health" (and makes other claims that are not the subject of this litigation), no representation is made as to the specified time period in which the product will work.[14] Thus, because there is no "written warranty," the MMWA claim fails as a matter of law.

Third, the MMWA looks to state law to define warranty claims. *See, e.g., Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 894 (11th Cir. 2006) ("implied warranty claims under the MMWA arise out of and are defined by state law."); *Karhu*, 2014 WL 815253, at *7

---

[13] *See, e.g., In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (finding allegedly false or misleading product labels did not warrant against defect or warrant a certain level of performance over a specified time period); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013) (applying rule and holding that allegedly false label with "sugar-free," "All Natural," and "fresh" claims were mere "product descriptions rather than promises of defect-free products" subject to MMWA); *Route v. Mead Johnson Nutrition Co.*, No. 12-7350, 2013 WL 658251, at *7 (C.D. Cal. Feb. 21, 2013) (same); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *13 (D.N.J. June 26, 2012) (same).

[14] *See, e.g., Skelton v. GM Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty."); *In re Shop-Vac*, 964 F. Supp. 2d 355, 361 (M.D. Pa. 2013) (statements on vacuum label regarding "horsepower" and "capacity" did not constitute MMWA warranties because they did not state that product was "defect free" or will meet performance level "over a specified period of time"); *In re Scotts EZ Seed Litig.*, No. 12-4727, 2013 WL 2303727, at *3 (S.D.N.Y. May 22, 2013) (statement that seed grows "50% thicker with half the water" fails to constitute MMWA warranty because it does not state that it will "achieve specific level of performance *over a specific period of time*").

(MMWA "borrow[s] state law causes of action for breach of both written and implied

warranties"). Therefore, it fails for the same reason that Plaintiff's breach of warranty claims

also fail under Florida law: lack of privity. *See, e.g.*, *Hill v. Hoover Co.*, 899 F.Supp.2d 1259,

1266 (N.D. Fla. 2012) (holding that MMWA "borrow[s] state law causes of action for breach of

both written and implied warranties" and dismissing MMWA claim for lack of privity).

### 3.   Plaintiff's Unjust Enrichment Claim (Count VI) Must Be Dismissed.

Because "the theory of unjust enrichment is equitable in nature," it is "not available

where there is an adequate legal remedy." *Nautica Int'l, Inc. v. Intermarine USA, LP.*, 5 F. Supp.

2d 1333, 1341–42 (S.D. Fla. 1998) (citations and quotations omitted). Indeed, it is well-settled

that a plaintiff has an adequate remedy at law—and therefore cannot bring an unjust enrichment

claim—when the unjust enrichment claim is based upon the exact same conduct as the other

substantive tort, statutory, or contract claims. *See, e.g., Guerrero,* 889 F. Supp. 2d at 1356

(dismissing unjust enrichment claim based upon false labeling because plaintiff "seeks recovery

for the exact same wrongful conduct as in her FDUTPA claim"); *Jovine v. Abbott Labs., Inc.*,

795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011) (applying rule); *Prohias v. Pfizer, Inc.*, 490

F.Supp.2d 1228, 1236 (S.D. Fla. 2007) (dismissing unjust enrichment claim premised upon

misrepresentations about product's qualities because "plaintiffs seek recovery for the exact same

wrongful conduct as in their consumer fraud act claims").

Here, consistent with *Guerrero, Jovine,* and *Pfizer,* Plaintiff's claim is clearly duplicative

of his other legal claims and must be dismissed. In his unjust enrichment claim, Plaintiff seeks

recovery for the exact same wrongful conduct and alleged misrepresentations as in his other

claims. (*Compare* Compl. ¶¶ 112-113 (basing unjust enrichment claim on allegation that

"Defendant has made false and misleading statements and/or omissions regarding the Product"

based upon "promote heart health" statement) *with id.* ¶¶ 68-71 (same for FDUTPA claim); ¶¶

75-80 (same for implied warranty claim); *id.* ¶¶ 85-88 (same for express warranty claim); *id.* ¶¶ 94-95 (same for MMWA claim); *id.* ¶¶ 103-108 (same for negligent misrepresentation claim). Thus, because Plaintiff has an alleged adequate remedy at law to address the alleged misrepresentations that form the basis for his unjust enrichment claim, his unjust enrichment claim must be dismissed. *See, e.g., Licul v. Volkswagen Group of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (dismissing unjust enrichment claim because it "merely restates their other causes of action").[15]

In addition, as discussed above, Plaintiff has failed to show that the receipt of any payment from Plaintiff for the product would be "unjust" or "inequitable." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (core of unjust enrichment claim is whether "inequity would result or persist"). Plaintiff has failed to allege any facts to show any misrepresentation on the label of Flush Free Niacin; that any false statement on the label caused Plaintiff to purchase the product; or that Plaintiff suffered any cognizable injury. Thus, Plaintiff's unjust enrichment claim must be dismissed.[16]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

---

[15]   Indeed, because all of Plaintiffs' substantive claims are defective, the derivative unjust enrichment claim fails as a matter of law, too. *See, e.g., Ironworkers*, 585 F. Supp. 2d 1339, 1345 (M.D. Fla. 2008) (dismissing unjust enrichment claim because all other tort claims failed as a matter of law).

[16]   In addition, Plaintiff has failed to plead that he conferred a "direct benefit" on Nature's Bounty. Under Florida law, a "plaintiff must *directly* confer a benefit on the defendant in order to recover pursuant to an unjust enrichment theory." *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (emphasis added). Indeed, the Eleventh Circuit recently applied this principle to affirm the dismissal of an unjust enrichment claim when the benefit was conferred only "indirectly." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming dismissal of unjust enrichment claim because payment came from intermediary (seller), rather than plaintiffs (purchasers)). Here, Plaintiff contends that he is entitled to the "excess amount paid for the Product" or the "purchase price" (Compl. ¶¶ 118-119), but admits that the product was purchased—not from Nature's Bounty—but through Walgreen's. (Compl. ¶ 38). Plaintiff alleges no facts as to what amount of his particular purchase, if any, purportedly went to Nature's Bounty. Thus, Plaintiff's unjust enrichment claim fails for this additional reason.

Dated: April 28, 2014

<u>/s/ Christopher J.M. Collings</u>
Robert M. Brochin, Esq.
Florida Bar No. 319661
<u>rbrochin@morganlewis.com</u>
Christopher J.M. Collings, Esq.
Florida Bar No. 0184403
ccollings@morganlewis.com
Brian M. Ercole, Esq.
Florida Bar No. 0102189
 bercole@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard
Suite 5300
Miami, Florida  33131-2339
Telephone:     305.415.3312
Facsimile:     305.415.3001

*Counsel for Nature's Bounty, Inc.*