UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-60580-CIV-BLOOM/VALLE

ANTHONY MAZZEO,

    Plaintiff,

v.

NATURE'S BOUNTY, INC.,

    Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant's Motion to Dismiss, ECF No. [51], Plaintiff's Second Amended Complaint, ECF No. [50], for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court is fully advised after a careful review of the record, the parties' briefs, and the applicable law.

### I.    Background

Plaintiff filed this class action on March 5, 2014, and after the Court's dismissal of Plaintiff's First Amended Complaint, *see* ECF No. [47], Plaintiff filed a Second Amended Complaint ("SAC"), bringing claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*; the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; and state law claims of negligent misrepresentation and unjust enrichment. Plaintiff alleges that Defendant's marketing, advertising, labeling, packaging and selling of its "Flush Free Niacin" product (the "Product") are "based on false, deceptive, unfair and/or misleading affirmative misrepresentations that are likely to mislead reasonable consumers because Defendant misrepresents and omits the true nature and benefits of the Product." ECF No. [50] at 1.

Plaintiff's SAC includes an image of the product's packaging, which provides claims that the Product, containing Inositol Hexanicotinate, promotes heart health, energy metabolism, and nervous system health. *See* ECF No. [50] at 2 (referring to these claims as the "Statement"). Plaintiff alleges that he and "other reasonable consumers interpret the Statement to mean that the Product is effective for and/or has a beneficial or helpful effect on, the promotion of heart health, energy metabolism, and nervous system health." *Id.* Plaintiff alleges that "all competent, reliable and scientific data proves that the Product does not provide any of these benefits," and "[t]he Product does not have any positive benefit on the preservation, maintenance, or improvement of heart health, energy metabolism, or nervous system health." *Id.*

In effect, Plaintiff alleges "[t]he advertising, marketing, and labeling for the Product is deceptive and misleading because reasonable consumers are led to believe that the Product, Flush-Free Niacin, is an alternative for ordinary 'Niacin,' without flushing of the skin." *Id.* Plaintiff explains that "Niacin" is the common name for nicotinic acid, which "has been used since the 1950s to try to lower elevated LDL ('bad') cholesterol and triglyceride (fat) levels in the blood," which, "in turn, promotes heart health, energy metabolism, and nervous health system health." *Id.* at 5 (citing Lonza Ltd., Media Center, Study Finds Extended Release Niacin, but not IHN, Effective in Lowering Cholesterol Levels, Feb. 6, 2013, *available at* http://www.lonza.com/about-lonza/media-center/news/2013/130206-niamax-study-results.aspx).

Plaintiff alleges that "although the Product does not cause flushing of the skin, it also does not provide its advertised benefits," and that "[t]he Product 'does not work,' and is not a Niacin alternative. Simply put, 'no flush, no effect.'" *Id.* at 3 (citing William Davis, M.D., *Ask the Doctor: Using Niacin to Improve Cardiovascular Health*, Life Extension Magazine, March 2007, *available at* https://www.lef.org/magazine/mag2007/mar2007_atd_01.htm). Plaintiff

2

claims that "the Product did not provide any of the advertised benefits [to Plaintiff or any member of the Class] and was not a 'Niacin' alternative, because . . . all competent and authoritative scientific data proves that the Product has no therapeutic benefit on the human body." *Id.* at 9.

Plaintiff's SAC includes an image of the Product's full label, showing under "Supplemental Facts" that the Product contains "Niacin (as Inositol Hexanicotinate)" and "Inositol (as Inositol Hexanicotinate)." ECF No. [50-1] at 2. The claims made on the product's label each has a small asterisk next to them, which links to a small asterisk contained elsewhere on the label. As with many dietary supplements, the small asterisk is displayed next to the following statement: "These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease." *Id.* Plaintiff alleges that "[r]easonable consumers, such as Plaintiff and the Class, are not scientists and are not expected to know the chemical, biological, and physiological difference between inositol hexanicotinate and nicotinic acid when shopping at the store." ECF No. [50] at 9. Plaintiff's SAC also includes the report of a "preliminarily retained expert, Olen R. Brown, PhD," who provided "opinions which support Plaintiff's claims." *Id.* at 10. *See also* ECF No. [50-2].

## II.     Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining

that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. See *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

### III. Discussion

Defendant challenges Plaintiff's reliance on the opinion of Dr. Olen Brown to support the claims in the SAC. Defendant also makes three arguments in support of its motion to dismiss for all of Plaintiff's claims: 1) Plaintiff has failed to allege an actionable misrepresentation; 2) all of Plaintiff's claims fail for lack of causation, and 3) all of Plaintiff's claims fail for lack of injury. Finally, Defendant argues Plaintiff's MMWA claim fails for many reasons, and that Plaintiff's unjust enrichment claim must also be dismissed.

### a. The SAC's inclusion of Dr. Brown's report

Defendant argues that Plaintiff's attachment of Dr. Brown's report as an exhibit is improper at this stage of the litigation and should be disregarded or stricken. *See* ECF No. [51-1] at 19 (citing *Meeks v. Murphy Auto Grp., Inc.*, No. 8:09-cv-1050, 2009 WL 3669638, at *1 (M.D. Fla. Oct. 30, 2009); *In re Advanced Battery Tech,. Inc. Secs. Litig.*, No. 11 Civ. 2279, 2013 WL 3784134, at *4 (S.D.N.Y. July 18, 2013); *Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098, 2004 WL 2029406, at *4 (S.D.N.Y. Sept. 9, 2004)). Plaintiff responds that there is "no inflexible rule" prohibiting the attachment of the expert opinion to the pleading and that it is permissible because it "form[s] the basis of the complaint." ECF No. [52] at 10 (citing *In re Mannkind Sec. Actions*, 835 F. Supp. 2d 797 (C.D. Cal. 2011); *DLJ Mort. Cap. Inc. v. Kontogianmis*, 726 F. Supp. 2d 225, 234 (E.D.N.Y. 2010); *United States v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003)).

The Court finds it appropriate to strike the expert report itself, *see DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001), and only consider the expert's *factual* statements that are incorporated in the SAC. *See id.* ("A better approach might be to include the expert's nonconclusory assertions within specific paragraphs in the complaint."); *Brothers v. Saag*, No: 4:13-CV-466-VEH, 2014 WL 838890 at *5-6 (N.D. Ala. Mar. 4, 2014) (considering expert's factual statements in deciding motion to dismiss an amended complaint but disregarding expert's opinions). The exhibit containing Dr. Brown's report is hereby stricken.

### b. Defendant's global challenges

Defendant argues that all of Plaintiff's claims must be dismissed because he fails to plausibly allege: an actionable misrepresentation, causation, and an injury. *See, e.g.*, *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008) ("Although not specifically identified

in the statute, there are three elements that are required to establish a claim pursuant to the FDUPTA: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.").

As for an actionable misrepresentation, Defendant argues that Plaintiff has failed to meet his burden to "allege facts, grounded in scientific studies, to affirmatively show that challenged statements on the label are demonstrably false." ECF No. [51-1] at 14-15 (citing *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355-56 (S.D. Fla. 2012); *Arroyo v. Pfizer, Inc.*, No. 12-4030, 2014 WL 415607, at *4-5 (N.D. Cal. Jan. 31, 2013); *Cortina v. Wal-Mart, Inc.*, No. 13-cv-2054, 2014 WL 2860285, at *5-6 (S.D. Cal. June 23, 2014); *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *5-6 (S.D. Fla. Sept. 13, 2013); *Padilla v. Costco Wholesale Corp.*, No. 11-C-7686, 2013 WL 195769, at *3 (N.D. Ill. Jan. 16, 2013); *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218 at *3 n.2, *5-6 (S.D. Cal. Nov. 1, 2012)). Defendant argues that "Plaintiff does not allege what each claim in the phrase 'promotes heart health, energy metabolism and nervous system health' means to him or how each claim should reasonably be interpreted, much less why Flush Free Niacin fails to meet Plaintiff's undisclosed interpretation." *Id.* at 15-16. Defendant argues that Plaintiff relies almost exclusively on legal conclusions and conclusory allegations. *See id.*

Plaintiff argues that he has plausibly shown that "the Statement is likely to mislead the reasonable consumer because all competent scientific evidence proves that the Product is not an effective alternative to niacin/nicotinic acid, nor does it provide any positive benefit to the body at all." ECF No. [52] at 9-10. Plaintiff explains that the SAC contains sufficient factual allegations to support "Plaintiff's theory that the Product does not 'promote,' is that the Product does not release pharmacologically effective concentrations of free niacin into the blood, and that it does not produce measurable changes in factors that are the mechanisms by which niacin can

have protective or otherwise beneficial effects on the heart and/or cardiovascular health, or on the nervous system and/or energy metabolism." *Id.* at 11. *See also id.* at 11-13 (distinguishing cases cited by Defendant).

The Court finds that Plaintiff's SAC plausibly advances the theory of Plaintiff's case—that a reasonable consumer purchased Flush-Free Niacin expecting similar benefits of Niacin, without Niacin's effect of the flushing of the skin. It is plausible that reasonable consumers purchasing a product labeled "Flush Free Niacin," even if the label specifies that the product contains "Niacin as Inositol Hexanicotinate," would be misled and damaged if taken as true:

> the product "flush-free" niacin (inositol hexanicotinate) has been studied and reported by authoritative, peer reviewed papers . . . with the clear results that the product (a) does not release pharmacologically effective concentrations of free niacin into the blood, and (b) does not produce measurable changes in the factors (including blood lipids and cholesterol) that are the mechanisms by which niacin can have protective or otherwise beneficial effects on the heart and/or cardiovascular health, or on the nervous system and/or energy metabolism.

ECF No. [50] at 11. *See In re Horizon Organic Milk Plus DHA Omgea-3 Marketing & Sales Practice Litigation*, 955 F. Supp. 2d 1311, 1331-32 (S.D. Fla. 2013) (quoting *Zlotnick v. Premier Sales Grp. Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) ("Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.")). Plaintiff has not, and is not required, to prove his case at this stage in the proceeding, and the Court finds that the pleading is sufficient.

Defendant's arguments regarding causation and injury are also unavailing. Defendant argues that Plaintiff's allegation that he purchased the product "because he 'believed the Product was an alternative 'Niacin' therapy" fails because "nowhere on the label of this vitamin supplement does it state it is a form of 'therapy.'" ECF No. [51-1] at 21. This, ultimately, is a mincing of words, as Plaintiff also alleges that he "purchased and consumed the Product in

reliance on Defendant's material representations on the front labeling and/or packaging of the Product," and "reasonably understood . . . 'promotes' to mean that consuming the Product is effective for providing the Statement benefits." ECF No. [50] at 17. Further, injury here is adequately alleged because Plaintiff seeks either restitution and disgorgement, or reimbursement of the premium price paid for Flush-Free Niacin, in comparison to what Plaintiff and other consumers would have paid had the Product not misled consumers. *See id.* at 28. *See, e.g.*, *Bohlke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418, at *7-8 (S.D. Fla. Jan. 20, 2015) (discussing *Rollins, Inc. v. Heller*, 454 So. 3d 580 (Fla. 3d DCA 1984)). *See also Tobaco*, 2013 WL 5206103 at *3; *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1301 (S.D. Fla. 2011).

### c. Defendant's claim-specific challenges

#### i. MMWA

The Court dismissed Plaintiff's breach of express warranty with prejudice. *See* ECF No. [47] at 3-4. Thus, Plaintiff's claim under the MMWA must be dismissed also. *See Burns v. Winnebago Indus., Inc.*, 2012 WL 171088, at * (M.D. Fla. 2012) (citing *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 323 (Fla. 3d DCA 2008)).[1]

#### ii. Unjust enrichment

Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because it is based on the same conduct as the underlying statutory claim and Plaintiff has an adequate remedy at law. *See* ECF No. [51-1] at 25 (citing *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-

---

[1] In his response, Plaintiff invites the court to reconsider its ruling on Plaintiff's breach of express warranty claim, raising the same arguments the Court previously considered. The Court declines this invitation absent a motion and appropriate showing. *See generally* Fed. R. Civ. P. 59, 60.

40 (S.D. Fla. 2011); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007)). Plaintiff argues that Fed. R. Civ. P. 8(d)(2) specifically authorizes the pleading of his unjust enrichment claim in the alternative.

The availability of Plaintiff's FDUTPA claim does not require dismissal of its unjust enrichment claim. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)). "Rather, it is only upon a showing that an express contract exists between the parties that the unjust enrichment . . . count fails." *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (quoting *State Farm*, 427 F. App'x at 722); *Williams*, 725 So. 2d at 400 ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment . . . is premature."). Thus, Plaintiff's unjust enrichment claim, brought in the alternative to his FDUTPA claim, stands.

**IV.    Conclusion**

For the above reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [51]**, is **GRANTED IN PART** and **DENIED IN PART**;

2. Count II of the Second Amended Complaint, Plaintiff's MMWA claim, is **DISMISSED**;

3. Defendant shall file an Answer to Plaintiff's Second Amended Complaint **no later than April 10, 2015.**

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 19th day of March, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record